Syllabus.

# Wytheville.

Virginia Passenger & Power Co. v. Fisher and Others.

June 15, 1905.

Absent, Cardwell, J.

1. Appeal and Error—*Appointment of Receiver—Change of Possession of Property.*—An appeal lies from a decree appointing a receiver whereby a change in the possesion or control of property is required; and, where the property is in the hands of receivers of another court, a direction to the receiver to intervene in that court and apply for the possession, and to take and receive the property from the receivers of that court is a sufficient change in possession and control to warrant an appeal to this court.

2. Appeal and Error— *What Reviewable.*—When a case is properly before this court on appeal from a decree appointing a receiver, all decrees and proceedings in the case are subject to consideration and review.

3. Corporations—*Diverting Assets—Suit by Stockholder.*—In order for a stockholder to maintain a suit in equity upon a cause of action existing in the corporation he must allege and prove a request or demand upon the directors, or other governing body of the corporation, or upon the stockholders where that is feasible, to institute proceedings against the wrong-doers, and their refusal after reasonable demand or request, or he must allege such facts in his pleadings as will show that it is reasonably certain that a demand for corporate action would have been useless. The fact that the wrong-doers own a controlling interest in the stock is a sufficient reason for not applying to them for redress, but is not a sufficient reason for failure to apply to the directors elected by them.

4. Corporations— *Wrong Doing — Collusion of Directors — Fraud — How Charged.*—An allegation that directors are colluding with wrong-doers and will not discharge their duties is the mere expression of an opinion or conclusion. Such an allegation is a charge of fraud, and to be made the basis of relief the facts out of which the fraud arises must be alleged and proved. It is not sufficient to state the conclusion without giving the facts upon which it is based.

5. Railroad Mortgages—*Suits Affecting—Parties.*—Railroad mortgages are a peculiar class of securities in which the trustee, expressly or impli-

edly, represents the bondholders, and it is his duty to enforce their rights and to protect their interests under the trust. He is the proper party to bring a suit for the foreclosure of such mortgage deed, or to protect or to recover the mortgage property, and a bondholder cannot bring such suit unless the trustee has been requested to do so, and has refused or neglected so to do within a reasonable time, or is in a position where he is unable to act.

6. EQUITY—*Suit by Unsecured Creditor*—A general creditor cannot file a bill in equity to enforce a claim against a living person, or a corporation which is a going concern, unless he has first obtained a lien upon property, except where otherwise provided by statute.

Appeal from a decree of the Hustings Court of the city of Petersburg in a suit in chancery. Decree for complainants. Defendants appeal.

*Reversed.*

The opinion states the case.

*Miles M. Martin, Christian & Christian* and *Munford, Hunton, Williams & Anderson,* for the appellants.

*Alex. Hamilton, Wm. B. McIllwaine, L. L. Lewis* and *Richard B. Davis,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The appellees, George E. Fisher, Charles Hall Davis and Philip Rogers filed their bill in the Hustings Court of the city of Petersburg against the Virginia Passenger and Power Company, the Charlotte and Prince Edward Electric Railway and Improvement Company, Frank Jay Gould, Helen Miller Gould and William Northrop, trustee, in which they sue for themselves and all others who are stockholders, or bondholders, or creditors, of the Virginia Passenger and Power Company who may come in and contribute to the costs of the suit. The number of shares of stock and the face value of the bonds which they own, respectively, is set out in the bill.

"The main purpose of the suit," as stated by the trial court, whose opinion is filed with the record, "is the appointment of a receiver to take charge of the property, rights, assets and franchises of said Virginia Passenger & Power Company, and operate the same under the direction of this court until the debts outstanding against said company, with their dignities and priorities, have been established; and for a sale of said property, rights, and franchises under the direction of this court, and the proceeds applied to the payment of the debts of said company in the order of their priorities as so established.

"Incident to said relief, the complainants pray that the defendants be enjoined, until the further order of this court, namely:

"1. Frank Jay Gould and Helen Miller Gould from disposing of the shares of stock and bonds of the Virginia Passenger & Power Company acquired by them under a certain agreement, bearing date December 23, 1902, commonly known as the 'Adjustment Agreement.'

"2. Frank Jay Gould and the Charlotte & Prince Edward Electric Railway & Improvement Company from disposing of the notes or other evidences of debt executed by the Virginia Passenger & Power Company in connection with the purchase of the Richmond & Petersburg Electric Railway Company, or of the said stock and bonds which are claimed to be held by them as collateral security for said notes or other evidences of debt.

"3. William Northrop, trustee, from selling or otherwise transferring to the Charlotte & Prince Edward Electric Railway & Improvement Company, or to any other person or corporation, any of the lands abutting upon the Appomattox river necessary for the development of the water power of said river, now held by him as such trustee."

The defendants demurred to and answered the bill. Upon the hearing of the cause, upon the motion of the complainants for the appointment of a receiver, and for injunctions as prayed for upon the pleadings, exhibits and affidavits filed, the

Court overruled the demurrer and appointed a receiver of all of the assets and property of the Virginia Passenger and Power Company, and directed him to hold the same as the officer, and under the direction, of the court. From that decree this appeal was allowed.

The first question to be considered is the motion of the appellees to dismiss the appeal as improvidently awarded, because that decree was not an appealable decree under the provisions of section 3454 of the Code.

It is well settled that an appeal lies from a decree appointing a receiver whereby a change in the possession or control of the property is required. *Smith* v. *Butcher,* 28 Gratt. 144; *Shannon* v. *Hanks,* 88 Va. 338, 13 S. E. 437; *Deckert* v. *Chesapeake Western Co.,* 101 Va. 804, 45 S. E. 799.

It is insisted by the appellees that the decree appealed from does not on its face require the receiver to take possession of any property, nor does it require any one to deliver property to him.

At the time the receiver was appointed, the property of the Virginia Passenger and Power Company was in the hands of receivers of the Circuit Court of the United States for the Eastern District of Virginia, appointed in the case of the *Bowling Green Trust Company, trustee,* against *Virginia Passenger and Power Company, and others,* instituted after this suit was brought and the motion made for the appointment of a receiver in the Hustings Court. In appointing a receiver in this case, the Hustings Court proceeded upon the theory, as is apparent from its decree, that the proceedings therein had given it jurisdiction of the subject matter of the suit and the parties to it, before the suit in the Federal court was instituted, and that as soon as the facts were properly brought to the attention of that court, it would, out of regard to that comity which exists and must exist between the State and Federal courts in such cases, if there is to be an orderly administration of justice, dismiss its receivers. 2 *Cook on Stockholders* (3rd Ed.), sec. 839, and notes.

Acting upon this view, the Hustings Court appointed its receiver, and directed him to intervene by petition or other proper proceeding in the cause of the *Bowling Green Trust Company* v. *Virginia Passenger and Power Company, &c.,* and request that court to vacate its order appointing receivers for the property in question, and direct them to turn over and deliver the property held by them to the receiver of the Hustings Court. And he was authorized and directed to take and receive from the receivers of that court the possession of all the property of the Virginia Passenger and Power Company, wherever situated, and generally to conduct all its business as a common carrier of passengers and freight, and to discharge all of the other public and private duties of that company. No further or other order was necessary on the part of the Hustings Court to authorize its receiver to take possession of the property when the Federal court surrendered possession of it, as it might have done but for the fact that this appeal and supersedeas was granted before application was made to that court by the receiver as directed.

We are of opinion, therefore, that the decree appointing the receiver in this case is an appealable decree, and that the motion to dismiss the appeal as improvidently awarded must be overruled.

The case being properly before this court upon appeal, all decrees and proceedings therein are subject to consideration and review. *Deckert* v. *Chesapeake Western Co., &c., supra.*

The action of the Hustings Court in overruling the demurrers to the bill is assigned as error.

One of the grounds of demurrer is that the complainants sue as stockholders of the Virginia Passenger and Power Company, but do not allege facts which show their right to maintain the suit in the capacity of stockholders.

It is not insisted that the complainants, as stockholders, have any right of action against the corporation of which they are members, but their claim is that they are suing as stockholders for the benefit of the corporation to redress its wrongs and to enforce its rights.

Under what circumstances a stockholder in a corporation may bring a suit in a court of equity upon a cause of action existing in the corporation, has been recently considered by this court in the case of *Mount* v. *Radford Trust Co.,* 93 Va. 427, 431, 25 S. E. 244. The conclusion reached in that case was, that in order for a stockholder to maintain such a suit he must allege and prove that a request or demand has been made upon the board of directors, or other body managing the corporation, to institute proceedings against the wrongdoers, and their refusal to do so after reasonable request or demand; or he must allege such facts in his pleading as will show that it is reasonably certain that a demand for corporate action would have been useless. This conclusion is sustained by the great weight of authority, and its correctness is not controverted by the appellees, as we understand their written and oral arguments. *Foss* v. *Harbottle,* 2 Hare 461, 493; *Hawes* v. *Oakland,* 104 U. S., 450, 26 L. Ed., 827; 2 *Pomeroy's Eq. Jur.,* sec. 1095; *Morawetz on Corp.* (2nd Ed.), secs. 239, 240; 2 *Cook on Stockholders* (4th Ed.), secs. 740, 741, and cases cited.

While a stockholder may maintain a suit where the cause of action is in the corporation without a request to the directors or managing body to institute suit, it can only be done under exceptional circumstances. The rule is stated by Mr. Justice Miller as follows, in *Hawes* v. *Oakland, supra*: "The plaintiff should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain within the corporation itself the redress of his grievances or action in conformity to his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation to induce remedial action on their part, and this must be made apparent to the court. If time permits or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders, as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it."

In the case of *Tuscaloosa Mfg. Co., &c.* v. *Cox, &c.,* 69 Ala. 71, it was held that where the interests of the corporation are suffering, or are likely to suffer, through the inefficiency or faithlessness of any agent or official, an appeal for redress should be made to the board of directors or other governing body; and on their failure or refusal to act, the next redress in ordinary cases will be found in the power of the ballot, under the charter and by-laws of the corporation; and though there may be cases in which the stockholder may invoke the restraining power of a court of equity in the first instance, it must be a very strong case, showing that an appeal to the board of directors would be of no avail, and delay extremely perilous.

The supreme judicial court of Massachusetts, in discussing this question in *Dunphy* v. *Travelers' Newspaper Association,* 146 Mass. 495, 497-8, 16 N. E. 426, 431, says: "Even where their (the officers) acts are *ultra vires* or otherwise illegal, a complaining member must first seek his remedy with the corporation. The only exception to the rule, that a stockholder must apply to the directors, and also if need be to the corporation for redress of a wrong done it, before he can sue in a court of equity for himself and on behalf of other stockholders, is where it appears that such application would be unavailing to protect his rights." See *Flynn* v. *Brooklyn, &c. R. R. Co.,* 158 N. Y. 493, 53 N. E. 520; *Boyd* v. *Sims,* 87 Tenn. 771, 11 S. W. 948; *Rathbone* v. *Gas Co.,* 31 West Va. 798, 8 S. E. 570; *Moore* v. *Silver Valley Mining Co.,* 104 N. C. 534, 10 S. E. 679; *Foss* v. *Harbottle,* 2 Hare 461, 493; *Gray* v. *Lewis,* L. R. 8 Ch. App. 1050.

The bill in this case contains no allegation that the directors had been requested to remedy the wrongs complained of by suit or otherwise. Having failed to make or allege such request, the next question is, Does the bill allege such a state of facts as shows that redress was not attainable through the action of the corporation? The material statements of the bill upon this question are in substance as follows: It is alleged that a ma-

jority of the stock of the corporation is owned by Frank Jay
Gould and his sister, Miss Gould, who are charged, particularly
the brother, with the wrongs complained of; that by virtue of
the said controlling interest in the capital stock of the Virginia
Passenger and Power Company, transferred to him by the ad-
justment agreement of December 23, 1902, he has since that
time continued in office as directors of that company all or
nearly all of the directors who were then in office, and who
recommended and advised or approved the execution of that
agreement, whereby he was given absolute control and manage-
ment of both the Virginia Passenger and Power Company and
the Atlantic Development Company, and has added to the direc-
·tors in the first named company, in addition to the old directors
retained by him, himself and two of his brothers, and also cer-
tain other persons who are holding offices or positions of trust in
some of the numerous corporations controlled by him or his
brothers, and many of whom have their offices or places of busi-
ness in the same building with him; that since he has assumed
control of the said company he has personally dictated and con-
trolled all its acts and doings; that the board of directors,
elected and continued by him in office, are and always have been
subservient to his wishes, and have in effect colluded with him
in the acts of spoiliation committed by him on the property and
assets of the said company; that the officers, directors and ser-
vants of the company are now, and have been since the 23rd day
of December, 1903, wholly subservient to his will and wishes,
and that he has personally directed, controlled, and carried into
effect all the acts of the company complained of; that since the
23rd day of December, 1903, when he assumed absolute con-
trol of the company, the complainants have sought in various
ways to get from officers of the company information as to its
action and its financial condition, and in reference to the trans-
fer of its bonds to the said Frank Jay Gould, and its general
management by him, and have both at general meetings of the
stockholders, and at the general office of the company in the

city of Richmond, asked for and sought such information, but the complainants, both at the stockholders' meeting, in which the said Frank Jay Gould has a large majority of the stock, and by the employees of the company at its offices in Richmond, who are under his domination, have been refused any and all evidence or information with reference to the said matters; that the complainants have sought from the officers of the company at its office in Richmond, and at stockholders' meetings, information with reference to the operation and condition of the company, but all information in reference to its affairs has been refused by its officers and directors at its office in Richmond, and also at its stockholders' meetings, where the complainants have propounded questions and sought information which has been uniformly and in every case refused them.

The averments of the bill, that Frank Jay Gould, the alleged wrongdoer, has since December, 1903, controlled a majority of the stock of the company, state a sufficient reason, we think, for not applying to the corporation, at a meeting of its stockholders, for action to redress the wrongs complained of. An application to the stockholders for corporate action under the facts alleged would have been a vain and useless undertaking. *Dunphy* v. *Travelers, &c. Asso.,* 146 Mass. 495, 498, 16 N. E. 426; *Decatur Mineral Co.* v. *Palm,* 113 Ala. 532, 540, 21 South. 315, 59 Am. St. 140.

But the fact that he controlled a majority of the stock and had elected to, and continued in, office the board of directors, did not relieve the complaining stockholders from applying to the directors, unless the other circumstances averred relieved them from that duty. *Dunphy* v. *Travelers, &c. Asso., supra*; *Decatur Min. Co.* v. *Palm, supra.*

The complainants do not allege who or how many directors there were when this suit was brought. There is an exhibit filed with the bill which shows that for the year ending December 31, 1903, the board consisted of nine members. How many of these were old and how many were new directors is not shown.

What offices or positions of trust the new directors held under Frank Jay Gould, which would have prevented them from faithfully performing their duties as directors are not stated. The fact that the old directors recommended, advised, or approved the agreement by which Frank Jay Gould and his sister obtained a majority of the stock of the company and to that extent control of it, is no ground for presuming that they would not perform their duty, since the complainants themselves were parties to and signed that agreement.

The allegation that the directors have always been subservient to his wishes and have, in effect, colluded with him in the acts of spoiliation charged to have been committed by him on the property and assets of the company, and that they are wholly subservient to his will and wishes, are not averments of fact but the conclusions of the complainants, based upon facts which are not alleged, and upon which, if alleged, the court might draw different conclusions. None of the directors except Frank Jay Gould are charged with deriving any benefit from his alleged wrongdoing, or made parties to the suit.

In the case of *Brewer* v. *Boston Theatre, &c.,* 104 Mass. 378, 388-9, the allegations as to the subserviency of the directors to the wrongdoers, the latter's control over them, and their faithlessness, were as marked as in this suit. In that case it was alleged that the directors "have allowed themselves to become little less than the creatures of Tompkins and Thayer" (the wrongdoers), "and registers of their wishes, and have come to consider that no duty rested or now rests upon them as directors to do more or other than to make said corporation and the property of the plaintiffs therein invested, serviceable to Tompkins and Thayer." That phraseology, said that court, "does not comport with the distinctness and certainty required of legal averments; and we do not think that any process of elimination would deduce from it the proposition that the present directors of the corporation are so hostile to its interests and to any judicial proceedings for their protection, as to make proceedings in

this forum necessary." Again, in discussing the allegation, "that a majority of the present board of directors of said defendant corporation are acting in the interest of and are under the control of said Tompkins and Thayer," that court said: "But this does not show that they are wholly disregardful of the interests of the corporation; or that they would so act if informed of the injurious effect of their action; or that they would yield to the influence of Tompkins and Thayer if aware of the purpose and uses for which that influence is exerted. It is not equivalent to a request and a refusal of the use of the corporate name and authority for the redress of the wrongs complained of; nor does it show that such an application upon a suitable representation of facts would be unavailing."

In the case of *Steiner, &c.* v. *Parsons,* 103 Ala. 215, 222, 13 South. 771, 774, where a bill was filed by a stockholder of a corporation to have redressed alleged corporate wrongs, without having made a request of the managing body of the corporation to have the grievances complained of corrected, it was held that the complainant must aver in his bill the facts constituting his excuse for not making such request, with particularity and definiteness. The averment of conclusions will not suffice. "The facts," said the court, "upon which such averments of conclusions rest should have been set out, so that the court might judge intelligently for itself—as it is its high duty to do in such cases—whether the plaintiff had the right to proceed to file the bill in his name or not. The particularity of averment to be observed in such cases has received extended discussion in adjudged cases, there being scarcely anything to be added on the subject." *Hawes* v. *Oakland, supra; Dunphy* v. *Travelers, &c. Asso., supra; L. & N. R. R. Co.* v. *Neal* (Ala.), 29 South. 865; *Mount* v. *Radford, supra; Boyd* v. *Sims, supra;* 2 *Cook on Corp.* (4th Ed.), sec. 741.

The allegation that a board of directors is colluding with the

wrongdoers, and that it will not perform its duty, or would fail to discharge its trust, is a charge of fraud, and fraud being a conclusion of law from facts, it is a well settled rule of pleading, both at law and in equity, that the facts out of which the fraud arises must be alleged as well as proved to justify relief on that ground. *Steiner* v. *Parsons, supra; Southall, &c.* v. *Parrish, &c.,* 85 Va. 403, 410, 7 S. E. 534, 1 L. R. A. 641.

The allegations of the bill do not show that any of the directors except Frank Jay Gould would be benefitted by the grievances complained of. Directors generally are, and always ought to be, stockholders in the corporation whose business they have charge of, and it is to their interest to conduct its affairs properly, and to discharge their trust faithfully. In the absence of causes which may influence them otherwise, the presumption is that they would do their duty, and this presumption is greatly strengthened when the effect of the duty would be to promote their own interests. *Porter* v. *Pittsburg, &c. Co.,* 120 U. S. 670, 7 Sup. Ct. 741, 30 L. Ed. 830; *Decatur, &c. Co.* v. *Palm,* 113 Ala. 531, 539, 21 South. 315, 59 Am. St. 140.

Without discussing further the allegations of the bill relied on to excuse the complaining stockholders from requesting the board of directors to redress the wrongs complained of, we are of opinion that under the rules of law governing this class of cases the bill does not allege such facts as show with reasonable certainty that the board of directors would have refused to remedy the wrongs complained of, or to bring a suit for that purpose, and that a request, or a demand upon them, to sue would, therefore, have been useless.

Another ground of demurrer to the bill is that the complainants have not alleged facts which show a right in them to maintain this suit in the capacity of bondholders.

The contention of the appellants is that the trustee in a railroad corporation mortgage is the proper party and the only proper party to bring a suit for the foreclosure of the mortgage, or to protect or recover the property of the corporation subject

to, or which should be subject to the lien of the mortgage; and that a bondholder cannot bring such suit unless the trustee has been requested so to do and has declined, or is in a position in which he is unable to act.

The general rule is that in suits respecting trust property, brought either by or against the trustees, the *cestui que trust* as well as the trustees are necessary parties (*Story's Eq. Pl.*, sec. 207), and this has been the rule generally followed in this State.   To this rule, however, there are exceptions.   *Story's Eq. Pl.,* 21 (6th Ed.), 207a; *Carey* v. *Brown,* 92 U. S. 171, 23 L. Ed. 469; *Buck* v. *Pennybacker's Ex.,* 4 Leigh. 5.

In the last cited case, it was held that the beneficiaries were unnecessary parties since the trustee in that case represented their interests.

In *Carey* v. *Brown, supra,* it was held that where the suit is brought by the trustee to recover the trust property or to reduce it into possession and in no wise affects his relations with the *cestui que trust,* it is unnecessary to make the latter parties.

In *Short's Law of Railway Bonds and Mortgages,* sec. 483, it is said: "One of the exceptions to the general rule is in relation to railroad mortgages.   The exception in that class of cases, he states, "may almost be said to overshadow the rule itself. The doctrine now universally accepted is, that the trustee is, in the absence of some special consideration, the only necessary party in suits to enforce or defend the rights of bondholders.   This doctrine may be referred to two principles: (1) The bondholders usually constitute a numerous class having a common interest, and therefore suits by or against them fall into the category of those in which appearance by representation is permissible; (2) The nature of the contract is such that the bondholders, in purchasing their securities, may reasonably be assumed to have agreed that the trustee should, under ordinary circumstances, be that representative."   Again, in section 485, in discussing the question, in what suits the trustee is the proper party plaintiff, he says: "From the above principle it follows that,

under ordinary circumstances the trustees are the proper parties to institute a suit for the foreclosure of the mortgage; or to maintain and defend the trust fund against wrongful attack or injury tending to impair its safety or amount; or to apply for an injunction to restrain an alleged illegal proceeding which will injure the value of the bonds and cast a cloud upon the security; or to bring suit to have a controverted priority or lien settled before irredeemable sale is made under another mortgage which is claimed to rank above the one made to the petitioners; or to secure from the company an accounting where it has neglected to apply earnings to the mortgage debt." And in section 462 it is said, that while the interposition of a trustee in the mortgage does not limit in any degree the abstract right of the bondholders to institute proceedings to foreclose, "it modifies the remedial procedure for its enforcement to the extent that the bondholders are not allowed to take any active steps in initiating a foreclosure suit unless they show that the trustee has refused to bring the suit, or is for some reason an improper person to represent their interests."

Judge Thompson, in his work on Corporations, vol. 5, sec. 6210, says, that "The position of *bondholders,* as beneficiaries under the trust expressed in the mortgage deed of trust, is somewhat analogous to that of *stockholders,* in respect of their rights of action to redress grievances arising in the management of the affairs of the corporation. Ordinarily such bondholders have no right to bring an action to foreclose the mortgage; but the trustee in the mortgage, as stated in the preceding section, is the proper person to sue. But if he neglects to sue after the happening of the condition which entitles the bondholders to a foreclosure, and after being requested by them so to do, they may bring the action to foreclose, making him a party defendant."

The rule on the subject, as stated in *Cook on Stockholders* (4th Ed.), vol. 3, sec. 826, is, that "The proper person to foreclose is the trustee to whom the deed of trust runs. Unless he refuses or neglects to perform his duty, his *cestui que trust,* the

bondholders, have no standing in court.   Hence the bondholder must, in good faith, place the matter before the trustee and ask him to commence the suit.   If then he refuse or decline to do so, the bondholder may sue.   But the bondholder in his bill of complaint must allege the request to the trustee, and the refusal or neglect of the trustee to act."   And in sec. 830, the same author says: "In addition to hondbolders' suits to foreclose the mortgage when the trustee refuses to do so, the bondholder may bring suit to protect the property where there is imminent danger to it and the trustee refuses to bring suit."

In 1 *Morawetz on Corp.,* sec. 239, it is said, that "It is a general rule founded on *convenience* and the implied agreement of the parties, that where a trustee is invested with active duties and represents numerous beneficiaries, no portion of the beneficiaries are entitled to bring suit for the protection of the trust, unless the trustee has refused, or is unable to take the necessary steps to protect it on their behalf."

The doctrine stated by the text-writers quoted is based upon, or grows out of, several considerations.   The peculiar character of the security (*Shaw* v. *Railroad Co.,* 100 U. S. 605, 25 L. Ed. 757); the fact that the trustees are parties to the mortgage contract, negotiating its terms and stipulations, to whom the usual rights and powers of mortgagees are reserved, and the usual obligation of mortgagors are made (*Coal Co.* v. *Blatchford,* 11 Wall. 172, 20 L. Ed. 179); that the debt secured generally consists of a large number of bonds which pass frequently from hand to hand, and are owned by many persons (3 *Cook on Corp.,* sec. 819); that generally all the rights the bondholders have or ever had in the mortgage, legal or equitable, they get through the trustees to whom the conveyance was made for their security (*Richter* v. *Jerome,* 123 U. S. 233, 246, 8 Sup. Ct. 106, 31 L. Ed. 132); the relation which the bondholders bear to each other, their bonds generally being of the same class and issued at the same time (*Shaw* v. *Railroad, supra*); the fact that the trust is not a dry, naked agency, but is coupled with

important duties in caring for the trust subject, as well as instituting foreclosure proceedings where necessary (3 *Cook on Stockholders,* sec. 815) ; the difficulty, if not the impossibility, of bringing all the bondholders before the court, and the injurious delays which may result from endeavoring to do so (*Story's Eq. Pl.,* sec. 97 ; 3 *Cook on Stockholders,* sec. 821) ; and the fact that by the terms, expressly or impliedly, of the mortgage itself the trustee generally is made the representative of all the bondholders (3 *Cook on Stockholders,* sec. 821). See *Coal Co.* v. *Blatchford,* 172 Wall. 172, 178, 20 L. Ed. 179 ; *Carey* v. *Brown,* 92 U. S. 171, 23 L. Ed. 469 ; *Kerrison* v. *Stewart,* 93 U. S. 155, 160-1, 23 L. Ed. 843 ; *Shaw* v. *Railroad Co.,* 100 U. S. 605, 25 L. Ed. 757 ; *Belfield* v. *Taylor,* 12 Cond. Eng. Chy. Rep. 93 ; *McFadden* v. *Mays Co.,* 49 N. J. Eq. 176, 22 Atl. 932 ; *Falmouth Nat. Bank* v. *Cape Cod Co.,* 166 Mass. 550, 44 N. E. 617 ; *Mergen* v. *Kansas, &c. Co.,* 15 Fed. Rep. 55 ; *General Elec. Co.* v. *La Grande,* 87 Fed. 590 ; *Consolidated Water Co.* v. *City of San Diego,* 89 Fed. 272.

The question now under consideration has never been passed upon by this court, so far as we know. The suit of *Gibert* v. *Washington, &c. R. Co.,* 33 Gratt. 586, was brought by bondholders under a railroad mortgage deed for the purpose of foreclosing the mortgages under which they were secured, and they were foreclosed in that suit. This, it is claimed by the appellees, must be regarded as a decision, by implication at least, that the suit was properly brought. Not only was no question made in that case as to the right of the bondholders to bring the suit, but their bill alleged that according to the terms of the several mortgage deeds the beneficiaries thereunder were entitled to foreclose the same (page 589). Under the allegations of the bill the bondholders had the right to sue, and as their right was not questioned that case cannot be regarded as adjudicating a question not raised, and so far as the record shows not in the mind of the court.

In *Osborne* v. *Big Stone Gap Colliery Co.,* 96 Va. 58, 30

S. E. 446, also relied on by the appellees, in which it was held that the trustee did not represent the creditors, the deed of trust was the ordinary deed of trust to secure certain creditors, and, there being nothing in the character of the trust to show that the trustee had the right to or could have represented all the creditors secured by it, it came within the general rule that in suits respecting the trust property brought either by or against the trustees, the beneficiaries as well as the trustees are necessary parties.

But as before stated, railroad mortgages are not like the ordinary deeds of trust, but are a peculiar class of securities in which the trustee, expressedly or impliedly, represents the bondholders, and it is his duty to enforce their rights and to protect their interests under the trust. This being so, it seems to us that the rule that the proper party to bring a suit for the foreclosure of such mortgage deed, or to protect or recover the property of the corporation subject to, or which should be made subject to, the lien of the mortgage, is the trustee, and that a bondholder should not be permitted to bring such suit unless the trustee has been requested to do so and has refused or neglected to do so within a reasonable time, or he is in a position where he is unable to act. Such a rule does not deprive the bondholders of any right or remedy, but merely imposes conditions upon them in the exercise of their rights and remedies well adapted to the protection of the rights of those interested in such securities, without subjecting bondholders to unnecessary inconvenience.

Courts of equity are swift to protect such minority bondholders from oppression and wrong, but it is no hardship upon them to require that they shall allege and prove such facts as show that they cannot get the relief desired through their representative, the trustee, and that their suit is necessary for their protection.

So far we have been considering the question without reference to the special provisions contained in the mortgage deed

under which the complainants claim. This deed, when all of its provisions are considered together, as they must be (*Polomac Mfg. Co.* v. *Evans,* 84 Va. 717, 720, 6 S. E. 2), clearly shows that the trustee therein was clothed with all necessary authority to assert and protect the rights of the bondholders secured thereby, and that it was made the duty of such trustee to do so. It further provides that the bondholders shall not institute any suit or proceeding for a foreclosure of the mortgage deed, or for the execution of the trusts under it, or for the appointment of a receiver, until after written notice has been given to the trustee of the default complained of, and a written request made to the trustee to exercise its powers, or to institute suit in its own name to assert the right or remedy the wrong in question. The provision in the mortgage deed, that a majority in amount of the holders of bonds shall unite in such request to the trustee before any of them can bring suit to protect rights or remedy wrongs which the trustee refuses or neglects to assert or remedy, need not be considered in this case, as there is no allegation that the complainants gave any such notice or made any such request.

The complainants having failed in their bill to aver that they had brought their grievances to the attention of the trustee and requested it to sue, or to set out such a state of facts as would show that the trustee was in such a position that it was unable to act, we are of opinion that the bill was demurrable on that ground.

Another ground of demurrer is that the complainants do not allege facts which show a right on their part to maintain this suit in the capacity of creditors.

The complainants sue in the capacity of general creditors, as well as of stockholders and bondholders, but they do not allege any indebtedness other than as bondholders, nor any indebtedness which was then due and unpaid. It is well settled

that a general creditor cannot file a bill in equity to enforce a claim against a living person or a corporation which is a going concern, unless he has first obtained a lien upon the property, except where otherwise provided by statute. *Rhodes* v. *Cousins,* 6 Rand. 188, 18 Am. Dec. 715; *Wallace* v. *Treakle,* 27 Grat. 479, 486; *Nunnally* v. *Straus,* 94 Va. 255, 260-1, 26 S. E. 580; *Hollins* v. *Briarfield,* 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113.

We are of opinion, therefore, that the bill of appellees does not show that they had the right to maintain this suit, either as stockholders, bondholders, or general creditors, and, not being entitled to maintain the suit the court erred in appointing a receiver.

Without considering the other grounds of demurrer, we are of opinion that the decree complained of must be reversed and set aside, and the cause remanded to the Hustings Court for such further proceedings as the appellants may be advised to take, not inconsistent with the views expressed in this opinion, and in accordance with law.

*Reversed.*