COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Alston and Senior Judge Coleman


ZACHARIAH HARDEN, SR.

                                                    MEMORANDUM OPINION*
v.        Record No. 1671-11-2                          PER CURIAM
                                                    FEBRUARY 7, 2012
RICHMOND DEPARTMENT OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                            T. J. Markow, Judge

            (Richard H. Lippson, on brief), for appellant.

            (Ramona L. Taylor, Assistant City Attorney; James M. Nachman,
            Guardian *ad litem* for the minor children, on brief), for appellee.


        Zachariah Harden, Sr. (father) appeals orders terminating his parental rights to his two

children, Z.H. and T.H.  Father argues that the trial court erred by (1) holding that the Richmond

Department of Social Services (RDSS) complied with its affirmative duty mandated by Code

§ 16.1-283(A) to investigate all reasonable options for placement of the children with relatives as a

condition precedent to entering an order terminating the residual parental rights of a parent; and

(2) finding that clear and convincing evidence exists to hold, under Code § 16.1-283(C), that father,

without good cause, has been unwilling or unable within a reasonable period of time not to exceed

twelve months from the date the children were placed in foster care to remedy substantially the

conditions which led to or required continuation of the child's foster care placement,

notwithstanding the reasonable and appropriate efforts of social, medical, mental health, or

rehabilitative agencies to such end.  Upon reviewing the record and briefs of the parties, we

_____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

On February 24, 2010, RDSS removed Z.H. and T.H. from mother's custody, at her request. Mother experienced auditory hallucinations and had thoughts of homicide and suicide. She was admitted into Tucker's Pavilion at Chippenham Hospital for psychiatric treatment and was diagnosed with schizoaffective bipolar disorder, anxiety, and depression.

The Richmond Juvenile and Domestic Relations District Court (RJDR) entered emergency removal orders on March 3, 2010. The children were placed in foster care with mother's former foster parent, who lived in Clarksville.

On April 7, 2010, RJDR sustained abuse and neglect petitions regarding the children based on mother's mental incapacity. Father was deemed "not the subject of complaint."

On May 19, 2010, mother and father were present for the initial foster care hearing. RDSS had limited contact with father while the children were in foster care. Father was required to complete parenting classes, obtain and maintain stable employment, and obtain and maintain suitable housing. RDSS tried to assist father with housing, but he did not complete the process. Father was homeless and worked at a temporary agency. RDSS arranged for transportation for visiting the children, but father visited the children only one time while they were in foster care. In November 2010, father was incarcerated for trespassing. Subsequently, he followed mother and moved to Greensboro, North Carolina. While in North Carolina, he and mother had a physical altercation. He did not stay in contact with RDSS.

On January 24, 2011, RDSS filed petitions to terminate parental rights because of the parents' lack of stability, the sudden move to North Carolina, the lack of stable housing, the parents' inconsistent contact with RDSS, and the physical altercation between mother and father. The termination hearing was originally scheduled for February 2011, but was continued to April 27, 2011, when the RJDR terminated both parents' parental rights. Mother and father appealed.

In approximately June 2011, mother moved back to Clarksville. Father also returned to Virginia.

Father provided RDSS with the names of two aunts as potential relative placements.[1] In order to investigate one of the aunts as a possible placement, RDSS submitted a home study request through the Interstate Compact for the Placement of Children (ICPC). It was determined that the aunt's home was not suitable for the children. The guardian *ad litem* (GAL) contacted the other aunt, and based on the GAL's communications with the aunt and testimony at a prior hearing, RDSS did not pursue her as a possible placement.

On July 14, 2011, the trial court heard evidence and argument from the parties. The trial court concluded that RDSS presented clear and convincing evidence to terminate mother's and father's parental rights under Code § 16.1-283(C)(1) and (C)(2). Mother and father appealed the rulings.[2]

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support

---

[1] Mother offered no names for an alternate placement.

[2] For mother's appeal, <u>see</u> <u>Saunders v. Richmond Dep't of Soc. Servs.</u>, Record No. 1623-11-2 (Va. Ct. App. Feb. 7, 2012).

it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

<u>Sufficiency of the evidence</u>

Father argues that the trial court erred in holding that the evidence was sufficient to terminate his parental rights. The trial court terminated his parental rights based on Code § 16.1-283(C)(1)[3] and (C)(2).[4]

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature,"

---

[3] A court may terminate parental rights if:

> The parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

Code § 16.1-283(C)(1).

[4] A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

> subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

Z.H. and T.H. entered foster care on February 24, 2010 and had been in foster care for seventeen months at the time of the hearing in the trial court. While the children were in foster care, RDSS required father to go to parenting classes, maintain stable housing, and stay in contact with RDSS. RDSS also required father to maintain stable employment. RDSS provided numerous services to assist father in meeting these goals; however, he was unable to do so.

During the time that the children were in foster care, father had at least three addresses.[5] Father failed to stay in contact with RDSS. During the time that the children were in foster care, RDSS had only two face-to-face meetings with father. Letters sent to father, at addresses provided by father, were returned, and phone numbers provided by father were out of service. Father visited the children one time while they were in foster care despite offers from RDSS to transport him to visitations. He initiated parenting classes, but did not complete them.

Father was unable to complete RDSS's requirements in a timely manner. As recently as two weeks before the hearing, he moved into new housing and signed up for parenting classes.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

---

[5] Father was homeless during part of this time period. He also was incarcerated in November 2010.

- 5 -

The trial court did not abuse its discretion in terminating father's parental rights under Code § 16.1-283(C)(1) and (C)(2).

Relative placement

Father argues that the trial court erred in holding that RDSS complied with its duty to investigate possible relative placements.

Before terminating a parent's rights, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A). The "Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Logan, 13 Va. App. at 131, 409 S.E.2d at 465.

Father provided RDSS with the names of two aunts as possible relative placements for the children. One aunt lived in New York. RDSS requested a home study through ICPC. New York determined that the aunt's house did not have sufficient space for the children. Another aunt lived in Georgia. The social worker testified that she did not pursue this relative due to the GAL's conversations with the aunt and based on testimony from a prior hearing. The Georgia aunt was elderly and did not want custody of the children.

RDSS presented sufficient evidence to the trial court regarding the relatives offered by the parents as possible placements. RDSS was not required to undergo "'a vain and useless undertaking'" by investigating the Georgia aunt who was elderly and did not want custody of the children. Hawthorne v. Smyth Cnty. Dep't of Soc. Servs., 33 Va. App. 130, 139, 531 S.E.2d 639, 644 (2000) (quoting Virginia Passenger & Power Co. v. Fisher, 104 Va. 121, 129, 51 S.E. 198, 201 (1905) (citations omitted)). In addition, the New York aunt did not have suitable

housing for the children. Therefore, the trial court did not err in concluding that RDSS satisfactorily investigated possible relative placements.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

<u>Affirmed.</u>