COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Alston and Senior Judge Coleman


ALEXI SAUNDERS

                                            MEMORANDUM OPINION[*]
v.      Record No. 1623-11-2                                      PER CURIAM
                                            FEBRUARY 7, 2012
RICHMOND DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
T. J. Markow, Judge

(Patrick D. Killebrew, on brief), for appellant.

(Ramona L. Taylor, Assistant City Attorney; James M. Nachman,
Guardian *ad litem* for the minor children, on brief), for appellee.


Alexi Saunders (mother) appeals orders terminating her parental rights to her two children,

Z.H. and T.H.  Mother argues that the trial court erred by holding that (1) mother, without good

cause, was unwilling or unable within a reasonable period of time not to exceed twelve months from

the date the children were placed in foster care to remedy substantially the conditions which led to

or required continuation of the children's foster care placement, notwithstanding the reasonable and

appropriate efforts of social, medical, mental health or rehabilitative agencies; (2) mother, without

good cause, failed to maintain continuing contact with and to provide or substantially plan for the

future of the children for a period of six months after the children's placement in foster care

notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other

rehabilitative agencies to communicate with the parent and to strengthen the parent-child

relationship; and (3) the Richmond Department of Social Services (RDSS) complied with its

affirmative duty mandated by Code § 16.1-283(A) to investigate all reasonable options for

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

placement of the children with relatives as a condition precedent to entering an order terminating the residual parental rights of a parent. Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

On February 24, 2010, RDSS removed Z.H. and T.H. from mother's custody, at her request. Mother experienced auditory hallucinations and had thoughts of homicide and suicide. She was admitted into Tucker's Pavilion at Chippenham Hospital for psychiatric treatment and was diagnosed with schizoaffective bipolar disorder, anxiety, and depression.

The Richmond Juvenile and Domestic Relations District Court (RJDR) entered emergency removal orders on March 3, 2010. The children were placed in foster care with mother's former foster parent, who lived in Clarksville.

On April 7, 2010, RJDR sustained abuse and neglect petitions regarding the children based on mother's mental incapacity. RJDR ordered mother to continue cooperating with RDSS.

On May 19, 2010, mother was present for the initial foster care hearing. Mother moved to Clarksville to be closer to the children. RDSS required mother to complete criminal and CPS background checks, participate in parenting classes with no unexcused absences, maintain contact with mental health support, follow the mental health provider's recommendations, complete a psychological evaluation, obtain housing and maintain suitable housing for at least three months, and maintain contact with RDSS. At the time, mother received mental health services, complied with her medication, and regularly visited with the children. While in

Clarksville, mother was twice admitted to psychiatric facilities. During both incidents, the children were present.

While mother lived in Clarksville, RDSS contacted the Boydton Community Service Board to inquire about services for mother. RDSS told mother about parenting classes and anger management classes that were available. Mother did not complete these classes. While in Clarksville, mother had mental health services and transportation to visit with the children. RDSS would provide bus tickets for court appearances.

Mother later moved to Greensboro, North Carolina. Father subsequently followed. In January 2011, mother was hospitalized at the Moses Cone Psychiatric Facility in Greensboro due to issues with her medication. When mother left the psychiatric facility, she lived at a women's shelter for "a few weeks" because she had a physical altercation with father. Then, mother moved in with her sister. While she lived in North Carolina, mother visited the children twice.

On January 24, 2011, RDSS filed petitions to terminate parental rights because of the parents' lack of stability, the sudden move to North Carolina, the lack of stable housing, the parents' inconsistent contact with RDSS, and the physical altercation between mother and father. The termination hearing was originally scheduled for February 2011, but was continued to April 27, 2011, when the RJDR terminated both parents' parental rights. Mother and father appealed.

In approximately June 2011, mother moved back to Clarksville. Father also returned to Virginia.

Father provided RDSS with the names of two aunts as potential relative placements.[1] In order to investigate one of the aunts as a possible placement, RDSS submitted a home study request through the Interstate Compact for the Placement of Children (ICPC). It was determined that the aunt's home was not suitable for the children. The guardian *ad litem* (GAL) contacted

---

[1] Mother offered no names for an alternate placement.

the other aunt, and based on the GAL's communications with the aunt and testimony at a prior hearing, RDSS did not pursue her as a possible placement.

On July 14, 2011, the trial court heard evidence and argument from the parties. The trial court concluded that RDSS presented clear and convincing evidence to terminate mother's and father's parental rights under Code § 16.1-283(C)(1) and (C)(2). Mother and father appealed the rulings.[2]

## ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

---

[2] For father's appeal, see Harden v. Richmond Dep't of Soc. Servs., Record No. 1671-11-2 (Va. Ct. App. Feb. 7, 2012.)

<u>Sufficiency of the evidence</u>

Mother argues that the trial court erred in holding that the evidence was sufficient to terminate her parental rights. The trial court terminated her parental rights based on Code § 16.1-283(C)(1)[3] and (C)(2).[4]

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

---

[3] A court may terminate parental rights if:

> The parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

Code § 16.1-283(C)(1).

[4] A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

Z.H. and T.H. entered foster care on February 24, 2010 and had been in foster care for seventeen months at the time of the hearing in the trial court. While the children were in foster care, RDSS required mother to go to parenting classes, maintain stable housing, and stay in contact with RDSS. RDSS also required mother to obtain mental health services and follow through with the recommendations. RDSS provided numerous services to assist mother in meeting these goals; however, she was unable to do so.

During the time that the children were in foster care, mother had at least seven addresses. Mother was admitted to psychiatric facilities four times over the course of the seventeen months. She did not consistently participate in mental health services and give the name of her mental health provider to RDSS. She initiated parenting classes, but did not complete them. She maintained sporadic contact with the children.[5]

Mother was unable to complete RDSS's requirements in a timely manner. As recently as two weeks before the hearing, she moved into new housing and signed up for parenting classes.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The trial court did not abuse its discretion in terminating mother's parental rights under Code § 16.1-283(C)(1) and (C)(2).

---

[5] Mother visited the children frequently when she was living in Clarksville, but only twice when she lived in North Carolina.

<u>Relative placement</u>

Mother argues that the trial court erred in holding that RDSS complied with its duty to investigate possible relative placements.

Before terminating a parent's rights, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A). The "Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." <u>Logan</u>, 13 Va. App. at 131, 409 S.E.2d at 465.

Mother did not provide any names to RDSS, but father provided RDSS with the names of two aunts as possible relative placements for the children. One aunt lived in New York. RDSS requested a home study through ICPC. New York determined that the aunt's house did not have sufficient space for the children. Another aunt lived in Georgia. The social worker testified that she did not pursue this relative due to the GAL's conversations with the aunt and based on testimony from a prior hearing. The Georgia aunt was elderly and did not want custody of the children.

RDSS presented sufficient evidence to the trial court regarding the relatives offered by the parents as possible placements. RDSS was not required to undergo "'a vain and useless undertaking'" by investigating the Georgia aunt who was elderly and did not want custody of the children. <u>Hawthorne v. Smyth Cnty. Dep't of Soc. Servs.</u>, 33 Va. App. 130, 139, 531 S.E.2d 639, 644 (2000) (quoting <u>Virginia Passenger & Power Co. v. Fisher</u>, 104 Va. 121, 129, 51 S.E. 198, 201 (1905) (citations omitted)). In addition, the New York aunt did not have suitable housing for the children. Therefore, the trial court did not err in concluding that RDSS satisfactorily investigated possible relative placements.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed.  Rule 5A:27.

<u>Affirmed.</u>