COURT OF APPEALS OF VIRGINIA

Present:  Judges Petty, Chafin and Senior Judge Annunziata

JORGE ALVARENGA, SR.

MEMORANDUM OPINION[*]

v.      Record No. 1642-12-4                    PER CURIAM
                                                MARCH 19, 2013

ALEXANDRIA DEPARTMENT OF
 COMMUNITY & HUMAN SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

(Douglas A. Steinberg, on brief), for appellant.

(James L. Banks, Jr.; Jill A. Schaub; Matthew W. Greene; Ellen M.
Dague, Guardian *ad litem* for the minor child; Office of the City
Attorney; Greene Law Group PLLC, on brief), for appellee.

Jorge Alvarenga, Sr. (father) appeals from an August 24, 2012 circuit court order

terminating his residual parental rights to his child pursuant to Code § 16.1-283(C)(1) and (2).

On appeal, father argues the trial court erred by terminating his parental rights 1) "after the

Department . . . failed to properly consider family placement with members of [his] family,"

2) after the Department "failed to properly consider placement with [him] after his term of

incarceration," and 3) after finding father failed "to rectify the conditions that led to the child

being placed in foster care due to his incarceration and possible removal to El Salvador."

Upon reviewing the record and briefs of the parties, we conclude this appeal is without

merit.  Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## Background

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

The Department obtained custody of father's son on November 18, 2010, the day after the child's birth, after the child's mother executed an entrustment agreement with an initial goal of returning home. In late 2011, the child's mother executed a permanent entrustment agreement with the Department and consented to the termination of her parental rights. At that time, the Department sought the involuntary termination of father's residual parental rights. Father was incarcerated at the time of his son's birth and remains incarcerated. He has had no contact with his child.

Father was convicted of felony participation in a street gang and has an anticipated release date of July 2014. Father also faces likely deportation to El Salvador upon his release from incarceration.

The Department presented evidence demonstrating they explored possible relative placement for the child but found no suitable, willing relatives.

## Analysis

"'In matters of child welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. at 128, 409 S.E.2d at 463 (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)). The trial court's judgment, "when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988).

I.

Father argues that the trial court erred in holding that the Department complied with its duty to investigate possible relative placements.

Before terminating a parent's rights, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A). The "Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Logan, 13 Va. App. at 131, 409 S.E.2d at 465.

The Department investigated father's relatives as potential placement options. Father initially provided only his mother's contact information. Father's mother would not permit the Department to conduct a background check "because she was concerned . . . how that would affect her current status in this country." The Department explained father's mother was not a legal resident of the United States and neither father nor his mother had ever provided the Department with any contact information for father's father. The Department identified only one relative, an aunt, in El Salvador and explained they were unable to determine what resources father's aunt would have to care for the child and that the aunt had never had any contact with the child. Finally, the Department spoke with father's cousin in California but she did not have current housing suitable to accommodate another child. Father did not provide contact information for any other relatives.

The Department presented sufficient evidence to the trial court regarding the relatives offered by father as possible placements. The Department was not required to undergo "'a vain and useless undertaking'" by further investigating unsuitable options. Hawthorne v. Smyth Cnty. Dep't of Soc. Servs., 33 Va. App. 130, 139, 531 S.E.2d 639, 644 (2000) (quoting Virginia

<u>Passenger & Power Co. v. Fisher</u>, 104 Va. 121, 129, 51 S.E. 198, 201 (1905) (citations omitted)). The trial court did not err in concluding that the Department satisfactorily investigated possible relative placements.

II. and III.

Father asserts the trial court erred by terminating his parental rights because the Department "failed to properly consider placement with the father after his term of incarceration" and erred by concluding father failed "to rectify the conditions that led the child being placed in foster care due to [father's] incarceration and possible removal to El Salvador."

In support of his second and third assignments of error, father includes a number of citations to case law, but little actual argument. He appears to argue the trial court based the termination of his parental rights solely on the fact that he was incarcerated. He also suggests "there is no testimony as to the father being offered any services." Father made neither of these arguments before the trial court.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18.

We "will not consider an argument on appeal which was not presented to the trial court." <u>Ohree v. Commonwealth</u>, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). "The purpose of Rule 5A:18 is to allow the trial court to correct in the trial court any error that is called to its attention." <u>Lee v. Lee</u>, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991) (*en banc*). Furthermore, we will not consider an argument on appeal that is different from the specific argument presented to the trial court, even if it relates to the same issue. See <u>Buck v. Commonwealth</u>, 247 Va. 449, 452-53, 443 S.E.2d 414, 416 (1994) (holding that appellant's

failure to raise the same specific arguments "before the trial court precludes him from raising them for the first time on appeal").

Father did not make these arguments before the trial court and is therefore barred from presenting them for the first time on appeal. A trial court must be alerted to the precise issue to which a party objects. Neal v. Commonwealth, 15 Va. App. 416, 422-23, 425 S.E.2d 521, 525 (1992).

Accordingly, Rule 5A:18 bars our consideration of these issues on appeal.

> Although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, appellant does not argue that we should invoke these exceptions. See e.g., Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) ("In order to avail oneself of the exception, a *defendant must affirmatively show* that a miscarriage of justice has occurred, not that a miscarriage might have occurred." (emphasis added)). We will not consider, *sua sponte*, a "miscarriage of justice" argument under Rule 5A:18.

Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*).

To the extent father challenges the sufficiency of the evidence supporting the termination of his parental rights under Code § 16.1-283(C)(1)[1] and (C)(2),[2] we note:

---

[1] A court may terminate parental rights if:

> The parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

Code § 16.1-283(C)(1).

[2] A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

Father has been incarcerated since before his child's birth. Father has had no contact with his son and provided no evidence regarding how the conditions that led to the foster placement of his child had been remedied. At the time of the termination hearing, the child had already been in foster care for more than twelve months and would be nearly four years old before father's release from incarceration. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). The trial court did not err in terminating father's parental rights under Code § 16.1-283(C)(1) and (C)(2).

For the reasons stated above, we summarily affirm the decision terminating father's parental rights. See Rule 5A:27.

Affirmed.

---

months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).