COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Kelsey and Senior Judge Hodges


ALEXANDER GILES

MEMORANDUM OPINION[*]
v.    Record No. 0445-03-2          PER CURIAM
JULY 15, 2003
RICHMOND DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge

(Craig W. Sampson; Sampson Law Firm, PLC, on
brief), for appellant.

(Sarah M. Denham, Assistant City Attorney;
Rene S. Hicks, Guardian ad Litem for Hakeem
Baker, on brief), for appellee.


Alexander Giles (father) appeals a decision of the trial

court terminating his parental rights and approving a goal of

adoption for Hakeem Baker (the child).  On appeal, father argues

that the trial court failed to adequately explore the possibility

of placing the child with a relative pursuant to Code

§ 16.1-283(A).  Upon reviewing the record and briefs of the

parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court.

See Rule 5A:27.

---

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

BACKGROUND

On appeal, we view the evidence and all the reasonable inferences in the light most favorable to the Richmond Department of Social Services (RDSS) as the party prevailing below.  See McGuire v. McGuire, 10 Va. App. 248, 250, 391 S.E.2d 344, 346 (1990).

Father and Kelly Baker (mother) are the parents of the child. The child was born on August 19, 2001, at which time he tested positive for cocaine.  He was immediately removed from the parents' care, and when he was two days old, he was placed in a foster home.  He remains in that home.  RDSS provided numerous services to the parents, but the parents did not comply with the services.

The goal of the first foster care plan was placement with relatives.  In June 2002, RDSS filed a foster care plan with a goal of adoption.  In July 2002, the juvenile and domestic relations district court approved the plan and terminated the parental rights of both parents.  The circuit court also approved the plan with the goal of adoption and terminated the parental rights of father and mother.

At the trial court hearing, Bragail Williams, an employee of RDSS who worked with the family from August 2001 until January 2002, testified that the parents identified the child's maternal grandmother as a possible relative to take custody of the child. Williams stated that RDSS investigated the grandmother and

-

determined there were several child protective services (CPS) complaints filed against her in both Wisconsin and Virginia. In addition, one of her children had been in foster care for at least six years and she had been convicted of felony child neglect in Wisconsin. The maternal grandmother also had had several other children removed from her custody, two of whom "aged out of the system." Therefore, RDSS did not find her to be a suitable relative for custody of the child.

Glynis Boyd, the foster care worker for the family since January 25, 2002, also testified concerning the RDSS investigation of the maternal grandmother. Boyd reiterated Williams' testimony that RDSS had determined the maternal grandmother was an inappropriate custodian based on a CPS complaint against her and the fact that her son remained in foster care because she had not addressed certain "issues."

Boyd also testified that she did not know father had five siblings and mother had an aunt living locally. Boyd stated that she did not ask the parents about other relatives because she understood that, when she took over the case, the maternal grandmother was the only relative suitable for RDSS to explore as a possible custodian. She also believed that Williams would have investigated or considered any other relatives when she worked on the case. Boyd did not believe the parents had identified to RDSS any other relatives of the child to consider for placement.

-

Mother testified that she believed the maternal grandmother should get custody of the child. Mother also stated that her Aunt Gloria "at one time" was willing to take custody of the child. However, mother did not know Gloria's last name or her address. Mother testified that the maternal grandmother had informed RDSS about the possibility of the aunt as a custodian. Mother did not know any other relatives who were responsible enough to help her and father raise the child.

Father testified that he was not ready to have custody of the child and he believed the maternal grandmother should be the child's custodian. When counsel asked father what he suggested should be done in the event the child could not stay with the maternal grandmother, father replied, "That's about all I know because my parents . . . [have] got my niece and nephews . . . ." Counsel asked father whether his siblings could assist in raising the child, and father replied that one sister was unable to assist due to her poor health and that he was not in touch with his other siblings.

### ANALYSIS

Code § 16.1-283(A) provides that in a termination of parental rights case "the court shall give a consideration to granting custody to relatives of the child, including grandparents." "[B]efore the court grants custody of a child, under the provisions of Code § 16.1-283(A) the Department has a duty to produce sufficient evidence so that the court may properly

-

determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 131, 409 S.E.2d 460, 465 (1991).

Here, RDSS thoroughly investigated the maternal grandmother, whom the parents identified as a potential custodian for the child. RDSS presented evidence supporting its determination that the maternal grandmother was not a suitable custodian for the child. Thus, the trial court considered evidence as to the suitability of placing the child with the maternal grandmother before it ordered the termination of father's parental rights.

Furthermore, although mother identified her Aunt Gloria as another relative who may be willing to take custody of the child, mother was unable to provide the aunt's last name or any information concerning how to contact the aunt. "It is well established in Virginia that a court will not compel 'a vain and useless undertaking.'" Hawthorne v. Smythe County Dep't of Soc. Servs., 33 Va. App. 130, 139, 531 S.E.2d 639, 644 (2000) (citation omitted).

Moreover, father testified that he did not know any other relatives who would be willing and suitable to take custody of the child. He stated that his parents and one of his siblings were not suitable custodians and that he no longer had contact with the rest of his siblings. "We do not suggest that the Department has a duty in every case to investigate the home of every relative of

-

the children, however remote, as a potential placement." Sauer v. Franklin County Dep't of Soc. Servs., 18 Va. App. 769, 771, 446 S.E.2d 640, 642 (1994). Therefore, we find that RDSS presented sufficient evidence for the trial court to consider the suitability of placing the child with relatives prior to terminating father's parental rights.

Accordingly, we affirm the judgment of the trial court.

Affirmed.

-