COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Kelsey and McClanahan
Argued at Salem, Virginia


LAURA ELENA DAVILA

                                            MEMORANDUM OPINION* BY
v.       Record No. 0387-10-3              CHIEF JUDGE WALTER S. FELTON, JR.
                                                  NOVEMBER 9, 2010
HARRISONBURG ROCKINGHAM
  SOCIAL SERVICES DISTRICT


                 FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                              James V. Lane, Judge

          Roland M. L. Santos for appellant.

          Kim Van Horn Gutterman, Assistant County Attorney; Danita S.
          Alt, Guardian *ad litem* for the minor children, for appellee.


        Laura Davila ("mother") appeals the trial court's termination of her residual parental rights

to her daughters E. and L., pursuant to Code § 16.1-283(C)(2), and its order approving permanent

foster care for her sons J., A., and D., pursuant to Code § 63.2-908.  She contends that the trial court

erred in finding the evidence sufficient to terminate her residual parental rights to E. and L. and to

order permanent foster care for J., A., and D.  She also asserts that the trial court erred in terminating

her residual parental rights to E. and L., contending that the Harrisonburg Rockingham Social

Services District ("HRSSD") failed to adequately investigate relative placement as required by

Code § 16.1-283(A) and 16.1-283(A1).[1]  For the following reasons, we affirm the judgment of the

trial court.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] The trial court also terminated Antonio Osorio's residual parental rights to E. and L.
pursuant to Code § 16.1-283(E)(iii).  He also appealed the trial court's decision.  See Osorio v.

I. BACKGROUND

Antonio Osorio ("father") picked up mother at a gas station when he was thirty-eight years old and she was thirteen years old. They had six children. The oldest child, H., a son, was born on August 28, 1995, when mother was fourteen years old.[2] Thereafter, the five children currently before the Court were born to the couple: J., a son, born on April 8, 1997; A., a son, born on July 21, 1998; D., a son, born on December 4, 1999; E., a daughter, born on August 21, 2001; and L., a daughter, born on June 16, 2003.

The family lived in Florida when mother separated from father in 2004. Father took the four boys and left Florida. In June 2005, father returned to Florida and took E., then age three and a half, and L., then two years old, from mother and moved to Texas. Father and the children later moved to Harrisonburg.[3]

On April 4, 2008, father was arrested for sexually abusing his girlfriend's seven and ten-year-old daughters.[4] HRSSD obtained custody of the children and placed them in foster care. While they were in foster care, E. and L. regularly attended counseling sessions. The girls had experienced so many transitions that it was "hard for them to create a coherent narrative of where they've been and where they've come from" when talking to their counselor. The girls had no memories of mother prior to their removal from father in April 2008. Their counselor testified at the parental termination hearing that the girls exhibited hypersexualized behaviors. Their foster

_____

Harrisonburg Rockingham Social Services District, Record No. 0340-10-3 (Va. Ct. App. Nov. 9, 2010).

[2] H. was not part of the proceedings before the trial court.

[3] H. lived with father until October 2007, when he was found delinquent and placed on probation in Harrisonburg. At father's request, mother came to Harrisonburg and took H. back to Florida with her.

[4] Father later pleaded guilty to aggravated sexual battery of the young girls.

father testified that the girls also exhibited these behaviors with each other, toward him, and while talking about sleeping with father in his bed while they lived with him.

Mother, with H., moved to Harrisonburg in June 2008 in an attempt to regain custody of the children. She obtained employment and attended a parenting class. With HRSSD's assistance, she moved into a subsidized five-bedroom house in April 2009.

In May 2009, after the children had been in foster care for thirteen months, the guardian *ad litem* objected to HRSSD's foster care plan with the goal of placement with mother. The juvenile and domestic relations district court gave mother additional time to demonstrate she was capable of having the children in her care.

On July 24, 2009, HRSSD initiated a trial home placement of E. and L. with mother.[5] Mother did not follow many of the guidelines set by HRSSD during the trial home placement. A HRSSD social worker told mother that E. and L. needed to continue counseling to address their hypersexualized behaviors and that both mother and the children needed to participate in the in-home counseling services HRSSD provided to her. However, mother cancelled multiple meetings with the in-home counselors, failed to return numerous phone calls to the in-home counselors and social workers, and did not schedule any counseling appointments for E. and L. Mother was also told anyone over eighteen years old needed a background check before being around E. and L. However, mother began dating a man a month after E. and L. began the trial home placement. She had the girls conceal that relationship from HRSSD. Mother was also instructed that all communication from father to E. and L. had to be pre-approved by HRSSD. Despite that directive, mother allowed father to communicate with E. and L., and gave them letters sent by father without first gaining approval from HRSSD.

---

[5] J., A., and D. remained in foster care; however, mother had reasonable visitation.

On October 28, 2009, three months after the trial home placement was initiated, HRSSD removed E. and L. from mother's home. The girls promptly resumed counseling. When the counselor discussed with the girls where they wanted to live, they stated that they did not want to live with mother. Thereafter, HRSSD filed foster care plans with the goal of adoption for E. and L. and petitions to terminate mother's and father's residual parental rights to E. and L. HRSSD also filed petitions to place J., A., and D. in permanent foster care.

After a hearing on the petitions, the trial court terminated mother's and father's residual parental rights to E. and L., and approved the foster care plans with a goal of adoption for them. The trial court also ordered permanent foster care for J., A., and D.

## II. ANALYSIS

### A. Standard of Review

"The termination of parental rights is a grave, drastic, and irreversible action." Lowe v. Dep't of Pub. Welfare, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986).

> When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests. On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Furthermore, the evidence is viewed in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom.

Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (alteration in original) (citations omitted) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). "'In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley, 9 Va. App. at 328, 387 S.E.2d at 795). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without

evidence to support it.'" Id. (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

B. Termination of Residual Parental Rights<br>and Permanent Foster Care

On appeal, mother contends the trial court erred in finding the evidence sufficient to conclude that she failed to substantially remedy the conditions that led to E. and L. being removed from her custody, despite assistance provided to her by HRSSD. She also asserts that the trial court erred in finding the evidence sufficient to support its permanency planning order placing J., A., and D. in permanent foster care.[6]

Mother acknowledges that she failed to properly preserve these asserted errors, but asks the Court to invoke the "ends of justice" exception to Rule 5A:18 in order to consider the merits of her claims. "[T]he ends of justice exception is narrow and is to be used sparingly." Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989). "In order to avail oneself of the exception, a [party] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997). The trial error must be "clear, substantial and material." Brown, 8 Va. App. at 132, 380 S.E.2d at 11. For the following reasons, we find no miscarriage of justice that would require reversal of the trial court's order terminating mother's residual parental rights to E. and L., and its order placing J., A., and D. in permanent foster care.

1. Termination of Residual Parental Rights

Mother asks us to invoke the ends of justice exception to Rule 5A:18 and reverse the trial court's termination of her residual parental rights to E. and L. pursuant to Code

---

[6] The trial court also ordered that mother be permitted reasonable visitation with J., A., and D.

§ 16.1-283(C)(2).[7]  However, the record fails to affirmatively demonstrate a miscarriage of justice that would require reversal of the trial court's order terminating mother's residual parental rights to E. and L.

The evidence reflected in the record on appeal was clearly sufficient for the trial court to terminate mother's residual parental rights to E. and L.  With HRSSD's assistance over the span of a year and a half, mother made some effort to try to regain custody of her children.  However, the trial court recognized that mother was unable to control her oldest son, H., who lived with her during the twenty-two months preceding the termination proceedings for E. and L.[8]  The evidence also showed that once E. and L. were placed in mother's care, she repeatedly failed to meet with HRSSD social workers, failed to schedule much needed therapy sessions for the girls, and had the girls conceal from HRSSD that she had a boyfriend.  Mother's "'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)).

Furthermore, E. and L. had been in foster care continuously from April 2008 until July 24, 2009, when the trial placement with mother began.  HRSSD removed E. and L. from mother, approximately three months after they were placed with her, and returned them to foster care.  "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v.

---

[7] Code § 16.1-283(C)(2) provides for the termination of residual parental rights when parents are "unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement."

[8] Mother was very permissive with H. and was unable to control him.  H. was eventually expelled from school and found delinquent for malicious wounding.  The trial court found mother failed to show she had "the ability to discipline, know where he [was], [or] do any of the things that [were] needed."

Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).  The trial court found that the girls needed closure and that they "seem[ed] to be very well adjusted" in foster care since their removal from mother.  It also found that "mother ha[d] not reached that point where any time soon she can truly step up to the plate and go forward with these children."

The trial court found, from the evidence presented to it, that there was clear and convincing evidence that it was in E. and L.'s best interests to terminate mother's residual parental rights "due to [the] great passage of time . . . and really still no stability" in mother's home.  Accordingly, we find no miscarriage of justice that would require reversal of the trial court's decision.

## 2. Permanent Foster Care

Mother also asks that we invoke the ends of justice exception to Rule 5A:18 and reverse the trial court's permanency planning order placing J., A., and D. in permanent foster care pursuant to Code § 63.2-908.[9]  However, the record fails to affirmatively demonstrate a miscarriage of justice that would require reversal of the trial court's order.  As noted above, after a year and a half of assistance by HRSSD, mother was still unable to adequately care for E. and L. during the trial home placement and was unable to control H.  See Linkous, 10 Va. App. at 56, 390 S.E.2d at 194.  Furthermore, J., A., and D. had been in continuous foster care since April 2008, a period of twenty-two months.  The same foster family with which the children had been placed offered to have them remain with their family until each reached eighteen years of age.  A HRSSD social worker testified that J., A., and D. were thriving in foster care.  See Kaywood, 10 Va. App. at 540, 394 S.E.2d at 495.

---

[9] Code § 63.2-908 provides, in part:  "A court shall not order that a child be placed in permanent foster care unless it finds that (i) diligent efforts have been made by the local department to place the child with his natural parents and such efforts have been unsuccessful . . . ."

The trial court found from the evidence presented to it, that there was clear and convincing evidence that it was in J., A., and D.'s best interests, due to the "long passage of time" and mother's inability to adequately parent her children, to remain in foster care on a permanent basis. Accordingly, we find no miscarriage of justice that would require reversal of the trial court's decision.

## C. Relative Placement

Mother also contends that the trial court erred in terminating her residual parental rights to E. and L. because HRSSD failed to investigate relative placement with father's brother Hector as required by Code § 16.1-283(A), (A1).[10]

When father was arrested in April 2008, he called his brother Hector asking him to assume custody of all five children. Hector did not do so at that time after learning mother would seek custody of the children. A HRSSD social worker testified that she did not thereafter pursue relative placement with Hector, nor did Hector thereafter contact HRSSD to obtain custody of the children. Another HRSSD social worker testified that after E. and L. were removed from mother's custody on October 28, 2009, she sent Hector a letter asking him to contact her if he was interested in obtaining custody of the children. Within a week after that letter was mailed, Hector called the social worker and left a message. She returned his call the following day, three days before the scheduled parental termination hearing in the juvenile and domestic relations district court. She informed him that if he wanted custody of the children he would need to file the appropriate paperwork with the juvenile and domestic relations district court prior to the scheduled hearing. Hector appeared before both the juvenile and domestic relations district court and the trial court and testified that he wanted to have custody of the two girls, E. and L. However, Hector never filed a petition to obtain custody of the girls.

---

[10] Hector did not seek custody of J., A., and D.

Code § 16.1-283(A) "requires that the court 'give a consideration to granting custody to relatives of the child' prior to terminating parental rights and placing the child in the custody of social services." Hawthorne v. Smyth Cnty. Dep't of Soc. Servs., 33 Va. App. 130, 139, 531 S.E.2d 639, 644 (2000) (quoting Code § 16.1-283(A)). "[T]he Department [of Social Services] has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Logan, 13 Va. App. at 131, 409 S.E.2d at 465. However, Code § 16.1-283 provides that a trial court may transfer custody of a child to the child's relative if that relative:

> (i) is found by the court to be willing and qualified to receive and care for the child; (ii) is willing to have a positive, continuous relationship with the child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect . . . .

Code § 16.1-283(A1).

Here, the trial court was provided sufficient evidence necessary for it to consider whether Hector, father's brother, was a willing and suitable person to be awarded custody of E. and L. Hector testified concerning his desire to acquire custody of E. and L. before the juvenile and domestic relations district court as well as the trial court. He testified that he lived in New York in "either a two or three bedroom home" with his daughter and two sons. Hector testified that he last saw E. and L. several years prior to the proceedings in the trial court. Hector told a HRSSD social worker that he did not know whether or not father committed the sexual battery for which he pleaded guilty, and when asked at the termination hearing whether he thought father sexually assaulted his girlfriend's seven and ten-year-old daughters, Hector said, "I am not a judge."

Even assuming, without deciding, that HRSSD failed to conduct an investigation to determine if placement of the children with Hector was appropriate pursuant to Code § 16.1-283,

- 9 -

we nevertheless conclude that any such error was, at best, harmless error. From the evidence, including Hector's testimony, the trial court found Hector to be "extremely reluctant" in asking for custody of E. and L., stating that "[h]e is only doing this as a last ditch effort to try to save the children from going to strangers and . . . he doesn't have the enthusiasm or really the willingness to do what he's going to have to do to undertake that tremendous cost and responsibility . . . ." See Hawthorne, 33 Va. App. at 139, 531 S.E.2d at 644 ("Because [the relative] testified as to her suitability to assume custody of [the child], there was no reason to require DSS to investigate her, as the court had before it all the evidence necessary to consider [the relative] as a possible custodian."); see also Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) ("The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."). Accordingly, we conclude that the trial court did not err in terminating mother's residual parental rights to E. and L. and in declining to place those children with Hector.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

Kelsey, J., concurring.

I fully concur with Chief Judge Felton's opinion. I write separately, however, to join in Judge Bumgardner's criticism of our interpretation of Code § 16.1-283(A) to require consideration of placement with relatives as a prerequisite to a parental termination decision. Hawthorne v. Smyth Cnty. Dep't of Soc. Servs., 33 Va. App. 130, 140-41, 531 S.E.2d 639, 644 (2000) (Bumgardner, J., concurring and dissenting in part). Whether a parent has forfeited his or her parental rights should not depend on whether the parent has good or bad relatives. Good relatives do not make an unfit parent fit any more than bad relatives make a fit parent unfit. As Judge Bumgardner pointed out in Hawthorne, the relative-placement consideration in Code § 16.1-283(A) relates only to the trial court's custody, not its termination, determination. Our precedent, however, has fused together these very different issues.