COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Elder and Beales
Argued at Richmond, Virginia


MICHELLE ADAMS, A/K/A
  MICHELLE ADAMS PULLEY

v.     Record No. 2362-07-2

RICHMOND DEPARTMENT
  OF SOCIAL SERVICES

MEMORANDUM OPINION[*] BY
CHIEF JUDGE WALTER S. FELTON, JR.
JULY 8, 2008

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Theodore J. Markow, Judge

H. Pratt Cook, III (Cabell & Cook, on brief), for appellant.

Kate D. O'Leary, Senior Assistant City Attorney (Patrick M. Moran,
Guardian *ad litem* for the minor child; City Attorney's Office, on
brief), for appellee.


Michelle Adams a/k/a Michelle Adams Pulley (mother) appeals an order of the City of

Richmond Circuit Court (trial court) terminating her residual parental rights to her minor child, J.

Mother contends the trial court erred as a matter of law in finding (1) Richmond Department of

Social Services (RDSS) used reasonable and appropriate efforts to locate family members willing to

care for J., as required by Code §§ 16.1-281 and 16.1-283; (2) without good cause, mother failed to

maintain continuing contact with, provide, or substantially plan for J.'s future for a period of six

months after J. was placed in foster care, as required by Code § 16.1-283(C)(1); (3) RDSS used

reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies

to communicate with mother and to strengthen the parent-child relationship as required by Code

§ 16.1-283(C)(1); and (4) without good cause, she was unwilling or unable within a reasonable

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

period of time to remedy substantially the conditions which led to or required the continuation of foster care placement as required by Code § 16.1-283(C)(2). For the following reasons, we affirm the judgment of the trial court.

## I.  BACKGROUND

On appeal, "[w]e view the evidence in the 'light most favorable' to the prevailing party in the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)). So viewed, the evidence established that mother gave birth to J. in November 2005. On January 3, 2006, RDSS removed J. from mother's care after it received reports that mother, who suffers from schizophrenia and bipolar disorder, was not taking her medication, using illegal drugs, shaking J., and screaming obscenities at him. The City of Richmond Juvenile and Domestic Relations District Court (JDR court) found mother to have abused and neglected J., who suffers from developmental delays including problems with his muscular development, and granted his custody to RDSS.[1]

RDSS initially filed a foster care plan with a goal of returning J. to mother's care. However, the goal of the foster care plan changed to adoption when mother failed to take her medication regularly, failed to maintain contact with RDSS for months at a time, and rarely exercised visitation with J. Mother was placed in various mental hospitals and jails for the majority of the time J. spent in foster care prior to the hearing in JDR court to terminate her residual parental rights to him.

In June 2007, the JDR court terminated mother's residual parental rights to J. and approved a foster care plan with a goal of adoption. Mother appealed the decision to the trial

---

[1] J. has been living with the same foster mother with whom he was placed in May 2006.

court.  Reviewing the termination of mother's residual parental rights and the foster care plan

with the goal of adoption *de novo*, the trial court held RDSS established by clear and convincing

evidence that termination of mother's residual parental rights under Code § 16.1-283(C)(1) and

16.1-283(C)(2) was in J.'s best interests, and granted RDSS's foster care plan with a goal of

adoption.[2]  This appeal followed.

## II.  ANALYSIS

### A.  Duty to Investigate Placement with Family Members Under
Code §§ 16.1-281 and 16.1-283(A)

Mother contends RDSS failed to use reasonable and appropriate efforts to locate and

investigate family members willing to care for J. before terminating her residual parental rights and

approving a foster care plan with a goal of adoption for J.  Specifically, she contends RDSS should

have investigated placing J. with his great-grandfather, Garland Haskins, Sr., his great-uncle,

Garland Haskins, Jr., or Mary Brown (relationship unknown).

Code § 16.1-283(A) provides in pertinent part:

> Any order terminating residual parental rights shall be
> accompanied by an order continuing or granting custody to a local
> board of social services . . . or the granting of custody or
> guardianship to a relative or other interested individual, subject to
> the provisions of subsection A1 of this section.  However, in such
> cases the court shall give a consideration to granting custody to
> relatives of the child, including grandparents.[3]

---

[2] Mother's two other children were removed from her care several years earlier and placed with their great-uncle, Garland Haskins, Jr.  After living with her great-uncle for seven years, the eldest child was returned to the custody of the Chesterfield County Department of Social Services (Chesterfield DSS).  The middle child, age nine, is still living with her great-uncle.

[3] The pertinent portions of Code § 16.1-281 list what is required to be included in a foster care plan when a child cannot be returned to his parents or will be placed in the custody of a relative.

- 3 -

In Sauer v. Franklin County Dep't of Social Servs., 18 Va. App. 769, 771, 446 S.E.2d 640, 641 (1994), we interpreted the Department of Social Services' duty to investigate placement of a child with relatives prior to termination of parental rights under Code § 16.1-283(A). We held that "the agency seeking termination has an affirmative duty to investigate all *reasonable* options for placement with *immediate relatives*." Id. (citations omitted) (emphasis added). We also concluded that the Department of Social Services does not have "a duty in every case to investigate the home of every relative of the children, however remote, as a potential placement." Id. at 772, 446 S.E.2d at 642. See also, Hawthorne v. Smyth County Dep't of Social Servs., 33 Va. App. 130, 139, 531 S.E.2d 639, 644 (2000) ("[T]he purpose underlying Code § 16.1-283(A)" is to "'give a consideration to granting custody to relatives of the child' prior to terminating parental rights and placing the child in the custody of social services" (quoting Code § 16.1-283(A))); Logan, 13 Va. App. at 131, 409 S.E.2d at 465 ("[B]efore the court grants custody of a child, under the provisions of Code § 16.1-283(A), the Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options.").

The record here reflects that RDSS investigated five family members as candidates for potential placement for J. Four of the candidates were submitted by mother, and one candidate was submitted by father.[4] Each was determined to be unsuitable or unwilling to care for J.[5] Although

---

[4] Father did not appeal the termination of his residual parental rights to J.

[5] M.H. (maternal grandmother) was deemed inappropriate/declined to care for J. because of her deteriorating health. In addition to having three Child Protective Services (CPS) investigations on file, R.D. (relationship unknown) was deemed unsuitable due to financial problems and problems obtaining day care. S.T. and A.B. (relationships unknown) both had criminal records. A foster care records custodian for RDSS also testified before the trial court that a step-grandmother was investigated, but did not provide details explaining why placement with the step-grandmother was unsuitable.

mother now contends that she offered RDSS the names of J.'s great-grandfather, great-uncle, and another relative (relationship unknown) as potential relatives for J.'s placement, RDSS contends it investigated all names provided by mother and father, and there is no evidence in the record to refute RDSS's assertion.

While we recognize that it was RDSS's responsibility to investigate all reasonable potential relative placements and that "relatives who may be considered as alternatives have no duty to present themselves as such[,]" Sauer, 18 Va. App. at 771, 446 S.E.2d at 641, there is no evidence in the record that any of the relatives mother now proffers as potentially suitable for placement are "immediate relatives" as required by Sauer, or that they are suitable or willing to care for J., particularly in light of his developmental delays. Moreover, at oral argument before this Court RDSS stated it was familiar with the placement of mother's other children with their great-uncle through Chesterfield DSS and that the great-uncle had recently returned the thirteen-year-old child to Chesterfield DSS. From this record, we cannot conclude that the trial court failed to "give a consideration[,]" as required by Code § 16.1-283(A), to placing J. with relatives when it investigated five relatives before it sought to terminate mother's residual parental rights.

B. Termination of Mother's Residual Parental Rights Under Code § 16.1-283(C) and Approval of a Foster Care Plan with a Goal of Adoption.

Mother also contends the trial court erred as a matter of law in finding (1) without good cause, she failed to maintain continuing contact with, and provide or substantially plan for J.'s future for a period of six months after J.'s placement in foster care; (2) RDSS used reasonable and appropriate social, remedial, mental health, or other rehabilitative agencies to communicate with her and to strengthen the parent-child relationship; and (3) without good cause, she was unable or unwilling within a reasonable period of time to substantially remedy the conditions that led to or required the continuation of foster care. Although mother presented three separate

questions related to Code § 16.1-283(C) in her brief, we address these questions collectively as they are interrelated.

Code § 16.1-283(C), under which the trial court terminated mother's parental rights, provides in pertinent part:

> The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child, and that:
>
> (1) The parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition, or
>
> (2) The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

When reviewing a decision to terminate parental rights, we presume the trial court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Toms, 46 Va. App. at 266, 616 S.E.2d at 769 (quoting Fields, 46 Va. App. at 7, 614 S.E.2d at 659). "In its capacity as a factfinder, therefore, the circuit court retains 'broad discretion in

making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley, 9 Va. App. at 328, 387 S.E.2d at 795).

Viewed in the light most favorable to RDSS, the prevailing party below, id. at 262, 616 S.E.2d at 767, credible evidence supports the trial court's conclusion that mother failed to maintain continuing contact with, and provide or substantially plan for J.'s future for a period of six months after J.'s placement in foster care. J. was two months old when he was removed from mother's care because of abuse and neglect. In the twenty-two months between his removal from mother's care and the trial court hearing, mother failed to remain in regular contact with RDSS. She only exercised visitation with J. three times, and each visitation occurred only after RDSS located mother and initiated contact with her.[6] At the time of the trial court hearing, mother had been incarcerated at Central State Hospital in Petersburg for at least six months related to her competency for trial on criminal charges.[7] The record is silent as to when she was expected to be competent to stand trial for the criminal offenses for which she was charged, or when she would be released from Central State. When asked how she planned to provide or substantially plan for J.'s future, mother admitted, "I have no plans where I am going to go . . . . I know that there are different programs offered by Family and Children Services that maybe [J.] and I could get into . . . ."

---

[6] After J.'s initial placement in foster care on January 3, 2006, mother made contact with RDSS the following day, and admitted to using marijuana and cocaine. She tested positive for both substances. She had no contact with RDSS or J. until June 2006, when RDSS located and visited mother at the psychiatric hospital at South Hill. Mother then exercised visitation with J. twice in June and once in July 2006, after RDSS located mother at Richmond Community Hospital. At each visitation, mother failed to exercise her right to care for J. for the full visitation period.

[7] Mother was awaiting trial for assaulting a police officer and possession of a controlled substance.

The evidence also established that RDSS had encouraged mother to remain compliant with her medications, and to keep appointments with Richmond Behavioral Health Authority (RBHA) for drug screenings. RDSS discussed parenting classes with mother, but determined that mother first needed psychiatric treatment "in order to be stable enough [] to understand what she needed to do [to properly care for J.]." Although mother argues that RDSS should have provided additional services through RBHA, as well as a counselor to oversee the various treatments she received from the mental hospitals, Code § 16.1-283(C)(1) only requires "reasonable and appropriate efforts" from RDSS to provide "social, medical, mental health or other rehabilitative agencies to communicate with the parent . . . to strengthen the parent-child relationship." In this instance, mother was already receiving inpatient mental health services, and we find no case law requiring RDSS to provide additional mental health services where services were already being provided. From this record, we cannot conclude the trial court was plainly wrong in finding mother failed to maintain continuing contact with J., and failed to provide or substantially plan for J.'s future, or in finding that her failure to do so was without good cause. Nor can we conclude that RDSS failed to use reasonable and appropriate social, remedial, mental health or other related agencies to communicate with her to strengthen the parent-child relationship. As such, we find mother's arguments that the trial court erred in terminating her residual parental rights under Code § 16.1-283(C)(1) to be without merit.

Despite RDSS's efforts to rehabilitate mother to a point where she was capable of substantially remedying the conditions which led to J.'s placement in foster care, the evidence also established mother was unable or unwilling to comply with Code § 16.1-283(C)(2). When briefly released from the various inpatient mental health programs and/or jail, mother failed to take her psychiatric medications on a regular basis, or to maintain contact with RDSS for support services, which led to further hospitalizations and arrests. Moreover, despite receiving inpatient

mental health services while hospitalized, at the time of the termination of parental rights hearing, mother had not been deemed competent to stand trial for pending charges for assaulting a police officer and possession of a controlled substance. This Court has established that mental health problems do not constitute good cause for failing to remedy a situation that led to or requires a child to remain in foster care. Richmond Dep't of Social Servs. v. L.P., 35 Va. App. 573, 584, 546 S.E.2d 749, 754-55 (2001). In this instance, mother's mental instability and inability to remain medication compliant, combined with her history of drug abuse and failure to maintain regular contact with RDSS, support the trial court's conclusion that mother failed to remedy the conditions which led to J.'s placement in foster care. Accordingly, we cannot conclude the trial court was plainly wrong in terminating mother's residual parental rights under Code § 16.1-283(C)(2).

### III. CONCLUSION

For the reasons stated above, we conclude that the trial court exercised reasonable diligence in investigating five family members with whom it sought to place J. prior to terminating mother's residual parental rights as required by Code § 16.1-283(A). We also conclude the trial court did not err in terminating mother's residual parental rights to J. under Code § 16.1-283(C)(1) and 16.1-283(C)(2), and in its approval of a foster care plan with a goal of adoption for J.

Affirmed.